UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONJA K. RYGG,<br><br>        Plaintiff,<br><br>    v.<br><br>METROPCS WIRELESS, INC. EMPLOYEE WELFARE BENEFIT PLAN, et al.,<br><br>        Defendants. | Case No. 17-cv-06891-JST<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF Nos. 34, 40, 43, 53 |

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 34, 43, and related motions to strike evidence and supplement the record, ECF Nos. 40, 53. The Court will grant Defendants' motion for summary judgment and deny Plaintiff's motion. The Court will deny both the motion to strike and motion to supplement as moot.

**I.    BACKGROUND**

The parties dispute whether Plaintiff Sonja K. Rygg is entitled to long-term disability benefits from Defendant Life Insurance Company of North America ("LINA") under the MetroPCS Wireless, Inc. Employee Welfare Benefit Plan. The Court described the underlying facts of this case in its prior order:

> It is not disputed that Rygg worked for MetroPCS as an administrative coordinator and was initially eligible for long-term disability benefits under the Plan, which defines "Disability/Disabled" as follows:
>
>> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
>>
>> 1.    unable to perform the material duties of his or her Regular Occupation; and

> 2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
>
> 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; and
>
> 2. unable to earn 60% or more of his or her Indexed Earnings.

AR 1699.[FN1] LINA paid benefits to Rygg for the 24-month period from September 6, 2012, through September 5, 2014, under these provisions. AR 351. However, based in part on a functional capacity evaluation performed at LINA's request, the company determined that Rygg could work in a different occupation – as an "Information Clerk" – and was therefore ineligible for benefits following the initial 24-month period. AR 381-82.

> [FN1] The Court will use Bates stamp numbers to cite to the administrative record, which is filed at ECF Nos. 41-1 and 41-2.

Rygg appealed that determination. AR 703-04. During the course of the appeal, Rygg's counsel informed LINA that Rygg was employed as an office manager by another company, RFI Security, from September 23, 2014, to January 9, 2015, and earned $1,000 per week. AR 1440. LINA denied the appeal based on this new information:

> Per your letter of April 09, 2015, Ms. Rygg worked from September 23, 2014 to January 2015 for RFI Security as an office manager. You indicated that Ms. Rygg's [weekly] wages were $1000, which calculates to $4333.33 per month, which is higher than her pre-disability earnings of $3938.13 per month. As Ms. Rygg was earning greater than 60% of her Indexed Earnings, she does not meet the Definition of Disability as outlined above. Furthermore, as Ms. Rygg returned to work with a different employer, she is no longer covered under the Metropcs Long Term Disability Policy through Life Insurance Company of North America. In addition, Ms. Rygg returned to work full time and as such was not disabled from any occupation until she was status post-surgery and could no longer work. During the period that Ms. Rygg returned to work, her Disability insurance coverage terminated under the policy per Termination of Insurance as outlined above. Although Ms. Rygg may have become disabled status post-surgery, she was no longer covered under the

2

above Long Term Disability Policy.

AR 372-73. LINA's denial letter advised Rygg that, "A second appeal request is not required but will be accepted if you have different or additional information to submit." AR 373.

Rygg opted to submit a second appeal, asking for a "determination on the functional capacity aspect" of her initial appeal and further contending that, despite her employment at RFI Security, she remained eligible for benefits under the Plan's "Successive Periods of Disability" provisions. AR 1415-18. That provision states:

> A separate period of Disability will be considered continuous:
>
> 1. if it results from the same or related causes as a prior Disability for which benefits were payable; and
>
> 2. if, after receiving Disability Benefits, the Employee returns to work in his or her Regular Occupation for less than 6 consecutive months; and
>
> 3. if the Employee earns less than the percentage of Indexed Earnings that would still qualify him or her to meet the definition of Disability/Disabled during at least one month.
>
> Any later period of Disability, regardless of cause, that begins when the Employee is eligible for coverage under another group disability plan provided by any employer will not be considered a continuous period of Disability.

AR 1705.

LINA denied Rygg's second appeal after considering a review of Rygg's file performed by "a medical doctor, Board Certified in Physical Medicine and Rehabilitation (PM&R) with added expertise in Pain Medicine." AR 351. Based on that review, and a further review by LINA's vocational rehabilitation department, LINA "determined that the sedentary occupation identified in the Transferable Skills Analysis (TSA) completed on July 24, 2014 was still appropriate given the aforementioned medical reviewer's restrictions and limitations. The identified occupation (Information Clerk DOT# 237.367-022) was sedentary and required mostly sitting, occasional stand/walk and lifting of negligible weight to 10 pounds." *Id.* The company therefore denied Rygg's second appeal. AR 352.

ECF No. 55 at 1-3 (footnote omitted).

After reviewing the record, the Court concluded that "it appears that LINA correctly

determined that Rygg was 'no longer covered' by the Plan based on her employment with RFI Security." *Id.* at 5 (quoting AR 372-73). Because the parties' briefs did not discuss this issue, the Court ordered the parties to file supplemental briefs, *id.* at 6, which the parties timely filed.

## II. LEGAL STANDARD

Under the Employee Retirement Income Security Act ("ERISA"), a plan participant or beneficiary may file a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). The parties agree that a de novo standard of review applies to this case. ECF No. 34 at 24; ECF No. 43 at 18-19; *see Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) ("[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."). A court conducting de novo review "simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (en banc). The claimant bears the burden of demonstrating his or her entitlement to benefits. *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010).

The court "may decide the case by summary judgment. It may not do so, however, if there are genuine issues of material fact in dispute." *Tremain v. Bell Indus., Inc.*, 196 F.3d 970, 978 (9th Cir. 1999). If there are material factual disputes:

> a trial is necessary. In resolving the disputed factual issues at trial, the district court may consider evidence outside the administrative record 'necessary to conduct an adequate de novo review of the [plan administrator's] benefit decision.' The evidence the court may consider in conducting its de novo review need not be admissible according to the strict rules for the admissibility of evidence in a civil trial, but may be considered by the district court so long as that evidence is relevant, probative, and bears a satisfactory indicia of reliability.

*Id.* at 979 (alteration in original) (citation omitted) (quoting *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 944 (9th Cir. 1995)). At trial, the court "can evaluate the persuasiveness of conflicting testimony and decide which is more likely true," and it must

4

make findings of fact under Federal Rule of Civil Procedure 52(a). *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1095 (9th Cir. 1999) (en banc). The trial need not include live testimony and may be conducted based on a review of the record. *Id.* at 1094-95.

## III. DISCUSSION

The material facts in this case are not in dispute: After paying two years of disability benefits to Rygg, LINA stopped paying benefits as of September 6, 2014, based on the Plan's different eligibility requirements after benefits have been payable for 24 months. Rygg began to work at RFI Security on September 23, 2014, and made more than what she was earning at MetroPCS Wireless before she became disabled. She never returned to work for MetroPCS Wireless.

The Court finds no reason to depart from its conclusion that LINA correctly denied benefits to Rygg because she was no longer covered by the Plan. As explained in the Court's prior order:

> The Plan provides that an employee's coverage ends "the date the Employee is no longer in Active Service," which is defined as the employee "performing his or her regular occupation for the Employer on a full-time basis" on a scheduled work day, or on the preceding scheduled work day if the day is a scheduled holiday or vacation day. AR 1701, 1712. Coverage "continues if an Employee's Active Service ends due to a Disability for which benefits under the policy are or may become payable. . . . If the Employee does not return to Active Service, this insurance ends when the Disability ends or when benefits are no longer payable, whichever occurs first." AR 1701.
>
> It is not disputed that Rygg's Active Service ended due to her Disability and that she never returned to Active Service. To determine whether Rygg's coverage ended, the Court must therefore consider whether Rygg's Disability ended or whether benefits became no longer payable. Only one of these conditions is necessary, but both are satisfied here, for the same reason. The Plan provides that "[b]enefits will end on the earliest of the following dates," including "the date the Employee earns from any occupation, more than the percentage of Indexed Earnings set forth in the definition of Disability applicable to him or her at that time." AR 1707. Rygg worked for RFI Security after she had been receiving disability benefits for 24 months, and the applicable definition of Disability therefore required that she be "unable to earn 60% or more of his or her Indexed Earnings." AR 1699. Rygg's earnings at RFI Security exceeded this amount. Consequently, based on her employment at RFI Security, Rygg failed to satisfy the Plan's definition of Disabled, and her benefits were no longer

5

> payable. Rygg's coverage under the Plan, including any coverage under the "Successive Periods of Disability" provision, therefore ended. *See Loria v. Children's Hosp.*, No. Civ.A.02-3194, 2003 WL 22038424, at *6 (E.D. La. Aug. 28, 2003) ("Put simply, the question of *how* a recurring disability is *treated* under the Recurrent Disability provision is secondary to the requirement that insurance coverage *exist* under the Policy." (emphasis in original)).

ECF No. 55 at 5-6 (footnotes omitted). Even if the Court were to assume, as Rygg asserts, that Rygg would satisfy the Plan's definition of Disability after she left her employment with RFI Security, and that this subsequent period of disability would meet the definition of a "Successive Period[] of Disability" under the Plan, AR 1705, Rygg would nonetheless not be entitled to any benefits because her coverage under the Plan terminated.

The Ninth Circuit considered similar facts in *Deegan v. Continental Casualty Company*, 167 F.3d 502 (9th Cir. 1999). In that case, "after appellant was fired from his employment at CCL, he remained unemployed due to his disability until March 1, 1991, at which time he took a job at Custom Printed Labs. He was fired from Custom Printed Labs on July 31, 1991. Appellant contends that appellee's insurance policy covered his disability even following his loss of employment from Custom Printed Labs." *Id.* at 507; *see also id.* at 505 ("Custom Printed Labs terminated its employment relationship with appellant because his disability precluded him from performing the necessary tasks of his job."). The appellant sought to rely on a "recurrent disability benefits" provision similar to the "Successive Periods of Disability" provision at issue here. *Id.* The court upheld denial of benefits because "appellant's coverage ended when he began his employment relationship with Custom Printed Labs (i.e., when his earnings exceeded his pre-Disability Salary). Therefore, the policy was no longer 'in force' and the 'Recurrent Disability Benefits' provision of the policy does not apply to appellant." *Id.* at 508.

In *Deegan*, the Recurrent Disability Benefits provision included a statement that, "Disability must recur while the Insured Employee's coverage is in force under this policy." *Id.* Rygg correctly observes that the Plan in this case does not contain such language. However, this does not render the policy ambiguous. The Plan clearly states the conditions under which coverage will end, and the undisputed facts demonstrate that those conditions were satisfied in this case. Rygg cites no authority for the proposition that a provision of an insurance policy can be

6

applied after coverage under that policy has terminated, and courts "will not artificially create ambiguity where none exists. If a reasonable interpretation favors the insurer and any other interpretation would be strained, no compulsion exists to torture or twist the language of the policy." *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir. 1990) (internal quotation marks and citations omitted).

Rygg also contends that she never regained the physical ability to work, and that the only reason she attempted to work at RFI Security was because LINA terminated her disability benefits and she needed income. She cites several cases where courts have noted the public policy rationale behind allowing individuals with disabilities to attempt to return to work without penalizing them by removing their eligibility for benefits, but in the majority of those cases, the individual in question was attempting to return to work with the same employer. In the only case Rygg cites where the plaintiff returned to work with a different employer, a district court in the Southern District of New York declined to apply a recurrent disability provision to bar an award of benefits because it found that "a literal reading of the recurrent disability provision that would allow First UNUM to wrongfully deny benefits to an insured, and then penalize him for attempting to earn some income, even as he is disabled and at potential peril to his health, would be unconscionable. Such a literal reading of that provision will not be given effect." *McCauley v. First Unum Life Ins. Co.*, No. 97 CIV. 7662 (LMM), 2009 WL 2526278, at *3 (S.D.N.Y. Aug. 18, 2009). However, no court has relied on *McCauley* for that proposition, and, like the plaintiff in another case in this district who attempted to rely on *McCauley*, Rygg "cites no authority and offers no analysis to show that the law in our circuit would permit application of unconscionability principles, like those relied upon in *McCauley*, to deny effect to an ERISA plan provision." *Hart v. Unum Life Ins. Co. of Am.*, No. C15-05392 WHA, 2017 WL 4418680, at *2 (N.D. Cal. Oct. 4, 2017).

Finally, Rygg argues that LINA waived the coverage argument by not raising it during the administrative process. However, this is not a case where LINA "did not raise [an issue] during the administrative review process, but only after it was sued." *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1199 n.2 (9th Cir. 2010). To the contrary, LINA's denial of

7

Rygg's first appeal explicitly stated that, "[d]uring the period that Ms. Rygg returned to work [for RFI Security], her Disability insurance coverage terminated under the policy. . . . Although Ms. Rygg may have become disabled status post-surgery, she was no longer covered under the above Long Term Disability Policy." AR 372-73. Thus, Rygg received notice that LINA believed that she was no longer covered by the Plan, and she was not "'sandbagged' by a rationale the plan administrator adduces only after the suit has commenced." *Jebian v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1104 (9th Cir. 2003) (citation omitted).

It is true that the denial of Rygg's second appeal "focused on the definition of disability under the Plan without mentioning Rygg's employment at RFI Security or her contention that she was eligible for benefits under the Plan's 'Successive Periods of Disability' provisions. However, because those provisions require that the claimant be disabled, LINA necessarily found that they did not apply when it determined that Rygg was not disabled." ECF No. 55 at 3 n.2. Rygg contends that the second appeal denial's silence on the coverage question means that "the Plan *abandoned* its claim of lapse of coverage." ECF No. 72 at 2 (emphasis in original). But she cites only the rationale that a claimant is entitled to know the reasons for denial during the administrative review process, and that a plan administrator may not "choose to hold . . . in reserve" a reason for denying benefits "rather than communicate it to the beneficiary." *Mitchell*, 611 F.3d at 1199 n.2. As discussed above, this rationale does not apply to this case, where LINA informed Rygg of the coverage issue in its denial of her first appeal. Moreover, the Court notes that Rygg earlier took the position that the second appeal should be disregarded as improper, and that the reasons from the denial of the first appeal should be the only bases for denial considered by the Court. ECF No. 34 at 26.

The Court concludes that its initial analysis that Rygg lost coverage under the Plan based on her earnings from RFI Security is correct. Under this analysis, the parties agree that Rygg's last day of benefits under the Plan was September 22, 2014, and that no benefits are due for the period between September 6 and 22, 2014, because "LINA has overpaid disability benefits to Plaintiff" following Rygg's subsequent award of Social Security benefits. ECF No. 71 at 2. The

Court will grant LINA's motion for summary judgment and deny Rygg's motion.  LINA's motion to strike extrinsic evidence and Rygg's motion to supplement the record will be denied as moot because the Court did not rely on any of the disputed evidence in reaching its decision.

## CONCLUSION

LINA's motion for summary judgment is granted, and Rygg's motion is denied.  LINA's motion to strike extrinsic evidence and Rygg's motion to supplement the record are denied as moot.  The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated:  August 19, 2019



JON S. TIGAR
United States District Judge